JASON SCHAEFFER
ESQWIRE.COM P.C.
1908 ROUTE 70 EAST
CHERRY HILL, NEW JERSEY 08003
P: (856) 874-9651
F: (856) 874-9182
jason@esqwire.com

BRETT E. LEWIS (*pro hac vice* application forthcoming)
MICHAEL CILENTO (*pro hac vice* application forthcoming)
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
Email: brett@iLawco.com
Email: michael@iLawco.com

*Attorneys for Plaintiffs National Institute of
Science and Technology and Sangram Mudali*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NATIONAL INSTITUTE OF SCIENCE AND TECHNOLOGY, and SANGRAM MUDALI,<br><br>Plaintiffs,<br><br>-against-<br><br>DR. SUKANT MOHAPATRA,<br><br>Defendant | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs National Institute of Science and Technology ("NIST") and Sangram Mudali ("Prof. Mudali") by their attorneys, for their complaint for damages and injunctive relief against Defendant Dr. Sukant Mohapatra ("Defendant Mohapatra"), allege as follows:

1

**Statement of Case**

1. Plaintiffs bring this action pursuant to 28 U.S.C. § 2201 and state and federal common law for Defendant's willful and unlawful conversion of NIST's domain name <NIST.edu> (the "Domain Name"), and tortious interference with its contractual relations with its students.

**The Parties and Personal Jurisdiction**

2. Plaintiff NIST is an engineering school, operated by the SM Charitable Educational Trust, with a principal place of business in Odisha, India.

3. Plaintiff Sangram Mudali is the Secretary of the SM Charitable Educational Trust, and Secretary of the Board of Governors of NIST. The Secretary is the administrative head of the Trust, and represents the Trust in all matters relating to the affairs of the Trust. Prof. Mudali is a citizen of India and resides at NIST Director Residence, Gopalpur on Sea, Berhampur 761002, Berhampur, Dist: Ganjam, Odisha, India. Dr. Mudali has run NIST since its inception in 1996.

4. Upon information and belief, Defendant Sukant Mohapatra is an individual and citizen of the United States, residing at 47 Burlington Drive, Marlboro, NJ, 07746. Defendant Mohapatra held the title of Chairman of the Trust, from August 19, 1995 until his removal in 2005, and from November 20, 2018 until his removal on May 16, 2020. The Chairman of the Trust presides over meetings, but has no other powers.

**Subject Matter Jurisdiction and Venue**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, and Defendant is a citizen of New Jersey and Plaintiffs are citizens or subjects of India.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as Defendant Mohapatra resides in this district, and all Defendants are residents of New Jersey.

7. Plaintiffs are constrained to move for relief in the U.S., as the domain name registrar, 'Educause' is a U.S-based company having its principal place of business in Washington, D.C. As such, relief can be most effectively and expeditiously implemented if granted by a U.S Court having competent jurisdiction, as opposed to seeking relief before the Indian Courts (on the grounds of jurisdictional issues and otherwise incurring delay in execution of the decree by foreign courts).

8. Further, Plaintiffs are constrained to file the Complaint in this Court, as Defendant Mohapatra is a Citizen of the U.S.A., residing permanently in this district. Defendant Mohapatra is not an Indian Citizen and does not stay or reside in India.

9. Section - 16 of the Indian Code of Civil Procedure, 1908, also prohibits Plaintiffs from instituting a suit in India claiming damages or for recovery of movable property (i.e., intangible property <nist.edu>) or for compensation for wrongs done to Plaintiffs' movable property, as the person concerned against whom Plaintiffs seek such reliefs resides in the United States and the property in question, i.e. the <nist.edu> domain name is not within the local limits of any Indian Courts.

**Background**

10. Nestled in the green hills of Pallur, the NIST campus is spread over 60 acres and is home to over 3,000 students. NIST ranks first among all colleges in Eastern India and 13th in technical institutes, according to DataQuest, a respected authority on college rankings in India. NIST ranks 60th in the entire country of India among top engineering schools.

11. NIST creates engineers, professionals, thought leaders who take the ever evolving technological, academic and societal challenges that are undergoing a sea change in every domain very rapidly. NIST boasts highly qualified faculty and is considered as a benchmark research institution in Eastern India.

12. The placement of students has been NIST's crowning glory. Top MNCs, IT companies have recruited hundreds of students each year since its inception. The Institute also has EDC and IIPC Unit for igniting entrepreneurial culture among the student communities. Over two dozen entrepreneurs amongst its alumni are testimony to its avowed aim of producing "job creators."

13. Despite NIST's academic success, disagreements arose between Defendant Mohapatra and the other trustees of NIST, over his misappropriation of funds and other wrongful acts.

14. There are eleven members of NIST's Board of Governors – six members are appointed by the Trust, and the other five by the government. There are four trustees of the Trust. Prior to their removal on May 16, 2020, Defendant Mohapatra and his wife Sanjeeta Mohapatra were trustees, along with Prof. Mudali, and Geetika Mudali. Defendant Mohapatra has not contested his removal as a trustee.

15. Prof. Mudali is also a Director on NIST's Board of Governors, as was Defendant Mohapatra prior to his removal. The Trust governs NIST through the Board of Governors, but ultimately, the Trust retains the power to decide the direction of the institution.

16. Defendant Mohapatra has lived in the United States since 1987 and has never been actively involved in running NIST. Between 1995 and 2005, he visited the school roughly every other year, mostly on school breaks.

17. Defendant Mohapatra was removed as a trustee in 2005 for wrongful interference with NIST's bank accounts. Thirteen years of fruitless litigation ensued in the courts of India, during which time Defendant Mohapatra sought reinstatement as a trustee.

18. A District Court in India found in 2005 that, while Defendant Mohapatra was "mostly residing in the U.S.A.," it was "Sangram Mudali, who was looking after the affairs of the Trust as Secretary." The court held: "[the] fact remains that it was Sangram Mudali, [] who has been in the helm of affairs through out so far as management of NIST is concerned. [Defendant Mohapatra] has only attended seven meetings of the Trust out of 39 meetings held so far."

19. The court declined to interfere with the management of NIST, which was "running smoothly," and declined to restore Defendant Mohapatra as a trustee. Presciently, the court held that, "[i]f I allow [Defendant Mohapatra] to resume his position in the Trust, the management of the Trust, and the NIST shall suffer for internal bickering and ultimately the student body of the NIST shall have to face irreparable loss."

20. After his father passed away in 2018, Prof. Mudali decided to give his sister's husband a second chance and agreed to reinstate him as Chairman of the Trust.

5

21. The agreement to restore Defendant Mohapatra as Chairman of the Trust was formalized by the entry by the Supreme Court of India of a Mediation Order on November 20, 2018 (the "Mediation Order"). The Mediation Order provided that the trustees had the power to remove a trustee if he or she became "lunatic," was "incapable of acting," or was "unfit to act."

22. From his removal in 2005 until his reinstatement in November 2018, Defendant Mohapatra had nothing, whatsoever, to do with the operation or administration of NIST or the Trust. This followed the decade from 1995 to 2005, in which Defendant Mohapatra made very few contributions to the Trust or the operation or administration of NIST.

23. Defendant Mohapatra was well aware of Clause 6 (e) of the Mediation Order, by which a Trustee can be removed for being a foreign trustee and incapable to act as a Trustee.

Defendants' Wrongful Conduct

24. Defendant Mohapatra was a founder of the SM Charitable Trust (the "Trust") and Chairman, Board of Governors at NIST before he was removed on May 16, 2020, pursuant to a unanimous resolution of the trustees of the Trust.

25. Defendant Mohapatra was removed as Trust Chairman for, among other reasons, being an American citizen, which disqualified him from being a trustee. Foreign citizens are not permitted under the laws of India to be associated with any research work in India, or to own any agricultural lands in India – both of which prohibitions he knowingly violated.

26. Defendant Mohapatra was also found by the trustees to have engaged in a wide array of malfeasance, ranging from bully tactics, cronyism, graft, and violence.

27. Defendant Mohapatra misappropriated about Rs. 10.0 million (about $135,000US) from the Trust Funds meant for NIST's students. He received multiple oral and written warnings about his misappropriation and misbehaviors.

28. In February 2020, after NIST declined to reimburse his personal travel expenses, Defendant Mohapatra promoted violence and anarchy at NIST, which culminated in a shut-down of the Institute for fifteen days. At one point, he even blocked water tankers from making a delivery to the school, and is believed to have paid hooligans to incite violence on the campus.

29. Defendant Mohapatra withheld the salaries of 500 employees in April, 2020 to teach the entire Institute a lesson to bend to his will. He also refused to pay the legitimate invoices of NIST's vendors. This culminated in all of the activities of the Institute being in limbo and caused demonstrable harm to NIST and its students.

30. Roughly ten long-time faculty members resigned as a result of Dr. Mohapatra's actions, as well as personal insults.

The Hijacking of the Domain Name

31. As part of his scheme to sow chaos and bend the Institute to his will, Defendant Mohapatra hijacked NIST's domain name, <NIST.edu> (the "Domain Name").

32. From 1996, until March 10, 2020, the Domain Name was registered in the name of NIST, as registrant, with Prof. Mudali as the administrative contact. As the Secretary of the Trust, and Secretary and Director of NIST, Prof. Mudali was and still is the top ranking official at NIST.

33. Defendant Mohapatra socially engineered the .edu Domain Name Registrar,

7

Educause, to grant him control of NIST's Domain Name, and with it, the school's primary means of messaging its students – NIST's email.

34. On March 11, 2020, Educause received a request from Defendant Mohapatra, as chairman of the NIST governing body, to have the NIST.EDU account credentials assigned to him. The letter was submitted on institutional letterhead under his signature.

35. Defendant Mohapatra falsely claimed that, as "Chairman" of NIST, *he* was the top ranking official at NIST. Despite knowing that he did not have such power or authority, Defendant Mohapatra, misled Educause with the intention to wrest control of the Domain Name and effectively gain control of NIST.

36. Although Educause's Customer Service Agreement is silent on the issue, Educause claims that it considers the "top executive authority of the institution or organization for a determination of who serves as the relevant contacts for the account."

37. After reviewing Defendant Mohapatra's documentation and the NIST.EDU website, Educause credited Defendant's false claims to being the overall head of the Institute. Educause provided him with temporary account credentials on March 12, 2020.

38. The account email log for the period shows that Defendant Mohapatra or someone working at his direction logged into the account on March 13, 2020, and replaced the temporary access credentials with new ones of his choosing.

39. The email address for the administrative contact was changed from Prof. Mudali's address to Defendant Mohapatra's address, and the technical contact was changed to a Mr. Mishra acting as an assistant IT administrator. A few weeks later, the account contacts were changed so that Mr. Bhargav Anatani was named both administrative and technical

contact, which is how the account stands presently. These changes led to a change in control of NIST as the appropriate administrators, trustees and educators were unable to communicate with each other, the students or take any action on online on behalf of NIST.

40. Upon becoming aware of the account changes and loss of control of the Domain Name, Plaintiffs contacted Educause and requested a return of the account settings and control to the original status.

41. Despite stating that "that Educause cannot and will not seek to reach a determination about the legal documents and interpretations presented by the various parties to this discussion," Educause did just that.

42. Rather than honoring the status quo, Educause made a determination – contrary to Indian law and the governing Trust documents and Mediation Order – that the Chairman (a mostly honorary title) and not the Secretary, as provided by the Mediation Order, was the top official at NIST.

43. Educuase removed Prof. Mudali as the administrative contact for the Domain Name and replaced him with Defendant Mohapatra.

44. After gaining control over the Domain Name, Defendant Mohapatra relinquished the administrative contact role to various co-conspirators – currently Mr. Bhargav Anatani. Defendant Mohapatra's cabal sent weaponized emails to students under cover of the school principal's official email account, principal@NIST.edu, directing them to ignore official school communications, not take exams, and not to pay tuition.

45. The emails were signed by Dr. Suhakar Das, an ally of Defendant Mohapatra's, who was fired by NIST on February 20, 2020, as "Principal" of NIST – a title that he did not

9

hold.

46. By email dated April 17, 2020, from principal@NIST.edu, titled, "Urgent Attention: Regarding Fraudulent Mails and Messages to Students and their Parents of NIST, Odisha," Dr. Das claimed that legitimate emails to students sent on behalf of NIST concerning "examinations, deposition of due fees, [and] online classes" were sent by "some fraudsters through a website nist.edu.in that's cunningly similar to ours – nist.edu. They are also sending mails to you to deposit your dues in an unauthorized SBI current account # 39223787121."

47. After the hijacking of the Domain Name, NIST had adopted the <Nist.edu.in> domain name as the school's official domain name.

48. Defendant Mohapatra then sent an email that purported to "warn" students about fraudulent messages and emails, which in reality were the authorized communications of NIST, and directed them to "ignore those fraudulent emails and messages therein," and not to "make any payment to fraudulent SBI bank account # 39223787121," which was NIST's bank account.

49. The email also contained false and misleading information about online classes, instructed students to ignore "fraudulent" messages concerning online examinations, claimed that criminal cases had been filed "against those fraudsters under various sections of the cyber crime act," and accused one of NIST's trustees and other faculty of hacking into a student's email account.

50. As a result of Defendant's interference with the Domain Name, student examinations could not be held during the month of May 2020, due to the examination coordinators' lack of access to the Domain Name.

51. Defendant Mohapatra arranged for a series of similar emails to be sent to students and their parents, including on April 18, 2020, May 2, 2020, May 14, 2020, June 27, 2020, July 1, 2020, July 5, 2020, and July 12, 2020.

52. In or about July 2020, Defendant Mohapatra started directing students to pay tuition into bank accounts under his *personal* control.

53. By email dated July 12, 2020, Dr. Das called Prof. Mudali and other members of NIST's faculty and administration, a "gang of cheats and frauds," claimed that they had been suspended, and in the case of Prof. Mudali, had "[m]ultiple cases pending against his name for bank fraud, cheat, etc. including cyber crime."

54. The email, sent purportedly on behalf of one of the top Universities in Eastern India to its student body [and parents/faculty], accused Prof. Mudali, the Secretary of NIST, and other members of the faculty and administration of being "a gang formed to loot students of NIST."

55. The damage and chaos sown by Defendant and his co-conspirators is breathtaking and irreparable. As a result of their coordinated attacks on NIST, the great majority of NIST's students abstained from paying tuition for the 2020-21 Fall Semester.

56. The school has collected only $7,000US in tuition in June, July and August, 2020 and has sustained irreparable damage to its reputation.

57. In 2019, NIST collected $1.7 million US in tuition during the same time period. In 2018, the amount was $2.6 million.

58. Only fifty new students have enrolled for admission at NIST compared with over five hundred for the comparable period last year.

59. These intentional disruptions with tuition payments, and the diverting of tuition into Defendant's private bank accounts, threatens the continuing viability of NIST as an educational institution. NIST relies on tuition payments to pay professors, administration staff, cafeteria workers, security, and run the school, in general. Without tuition, NIST cannot function. Indeed, the situation is beyond dire. NIST is figuratively burning.

60. Since March, 2020, Plaintiff has been advocating relentlessly to regain account access to the Domain Name with Educause, by petitioning Educause, and responding to requests for information and clarification to allow the Registrar to restore the original contacts and domain name settings. Plaintiff even flew to the United States to coordinate efforts to regain control of the Domain Name. On August 4, 2020 Plaintiff's efforts proved fruitless after Educause affirmed its decision to grant Defendant Mohapatra control over the Domain Name. As with most Domain Name Registrars, Educause, which is based in Washington, D.C., will not take any action to change Registrar account settings, absent a Court or Administrative Order. Plaintiff promptly sought U.S. counsel and initiated the present action.

61. Over the decades, Plaintiffs' relentless efforts allowed NIST to enriched its Web site, located at www.nist.edu, making it a valuable part of NIST's school 'goodwill,' and has become one of the most reputed, elite, high technical educational institution of the country (India). All work, assignments, communications, data, research and development works, and various important academic works are done and performed through the Domain Name, shared by the Institute's 3000 above brilliant students, school faculty, staff, and fifteen thousand-plus alumni living across the world. Hence, the Domain Name has been shaped into one of NIST's most valuable intellectual properties, which must be recovered from the clutches of

12

wrongdoers, who are acting at the behest of Defendant Mohapatra.

**FIRST CLAIM FOR RELIEF**
**(CONVERSION)**

62. Plaintiffs repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 61, with the same force and effect as if set forth in detail herein again.

63. The Domain Name was rightfully registered by Plaintiffs with Educause, and was in good standing at the time that it was hijacked by Defendant Mohapatra. Plaintiffs never authorized its transfer to Defendant, or any other party.

64. Plaintiffs NIST and Prof. Mudali are the rightful registrant and Administrative Contact of the Domain Name, respectively.

65. As such, Plaintiff had the right to immediate possession of the Domain Name at the time that it was hijacked by Defendant Mohapatra.

66. By stealing the Domain Name from Plaintiff's Educause account, Defendant Mohapatra exercised wrongful dominion or control over the Domain Name in denial of and inconsistent with Plaintiff's rights therein.

67. As of the date of this complaint, Defendant Mohapatra still maintains control over NIST's Domain Name through his proxy, Mr. Bhargav Anatani. Yet, Mr. Anatani is neither the top ranking official at NIST, nor even currently employed by NIST – he is an ex-employee fired on February 29, 2020.

68. Mr. Anatani could not have become the administrative contact for the Domain Name without Defendant Mohapatra providing him with account access and the password for the Institute's Educause account.

13

69. Defendant Mohapatra further used the Domain Name to attack and malign Prof. Mudali and the administration of NIST, accused them of being a gang of fraudsters, instructed students not to take exams and to disregard emails from the Institute, instructed students to send tuition payments to Defendant's bank accounts, all to the extreme detriment of NIST.

70. As a result of said conversion, Defendant Mohapatra conducted himself in a manner that was malicious, oppressive, outrageous, willful, wanton, reckless and abusive such that would entitle Plaintiff to compensatory and punitive damages, in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorney's fees.

71. Furthermore, Plaintiffs are entitled to injunctive relief of return and transfer of the Domain Name from Defendant and Bhargav Anatani to Plaintiff's control, with Prof. Mudali as administrative contact.

**SECOND CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

72. Plaintiffs repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 71, with the same force and effect as if set forth in detail herein again.

73. The Domain Name was rightfully registered by Plaintiffs with Educause, and was in good standing at the time that it was hijacked by Defendant Mohapatra. Plaintiffs never authorized its transfer to Defendant Mohapatra, or any other party.

74. As such, NIST is the rightful registrant, and Prof. Mudali is the lawful administrative contact of the Domain Name.

75. A justiciable controversy exists between Plaintiffs and Defendant.

76. To resolve this actual controversy, Prof. Mudali seeks a declaration and

14

judgment that he is the rightful administrative contact of the Domain Name, and seeks an Order of this Court restoring him as the Domain Name's administrative contact, pending a full adjudication on the merits.

## THIRD CAUSE OF ACTION
### (Tortious Interference with Prospective Contractual Relations)

77. Plaintiffs repeat and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 76, with the same force and effect as if set forth in detail herein again.

78. NIST had economic relationships with roughly 3,000 students, which NIST developed through its own efforts. Each student who enrolls at NIST makes a contractual commitment to pay tuition.

79. Defendant Mohapatra had knowledge of the existence of these relationships and contracts.

80. Upon information and belief, Defendant Mohapatra intentionally induced the students to breach their contractual obligations to pay tuition, with the deliberate intent of harming the Institute, and diverted tuition payments for Defendant's own personal gain.

81. Defendant's email campaign was intended to disrupt, and did disrupt, existing contracts with students.

82. Defendant Mohapatra, in fact, induced students to breach their contracts with NIST, and to withhold tuition payments.

83. As a result of Defendant's actions, NIST suffered damages in the form of lost tuition payments and untold losses from the disruption of NIST's student relationships and reputation, in an amount to be proven at trial, but in no event less than $5,000,000US.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for a judgment against Defendant that:

1. Prof. Mudali immediately be restored as the administrative contact for the Domain Name;

2. awards Plaintiff compensatory damages against Defendant according to proof at trial but in an amount not less than $5,000,000.00US;

3. awards Plaintiffs punitive damages due to Defendant's willful and wanton behavior; and

4. such other relief as the Court deems just and equitable under the circumstances.

DATED this 4th day of September, 2020

Respectfully submitted,

ESQwire.com, P.C.

_____

Jason Schaeffer

LEWIS & LIN, LLC
Brett E. Lewis
Michael Cilento

*Attorneys for Plaintiffs*

16

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand trial by jury on every issue on which they are so entitled.

Dated:  September 4, 2020.

                                                                         Respectfully submitted,

                                                                         ESQwire.com, P.C.

                                                                         _____
                                                                         Jason Schaeffer

                                                                         LEWIS & LIN, LLC
                                                                         Brett E. Lewis
                                                                         Michael Cilento

                                                                         *Attorneys for Plaintiffs*