**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL INSTITUTE OF SCIENCE AND TECHNOLOGY, et al., | |
| Plaintiffs, | Civil Action No. 20-12361 (MAS) (ZNQ) |
| v. | **MEMORANDUM OPINION** |
| SUKANT MOHAPATRA, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiffs National Institute of Science and Technology (the "NIST") and Sangram Mudali's ("Mudali") (collectively, "Plaintiffs") Motion for a Temporary Restraining Order. (ECF No. 3.) Defendant Sukant Mohapatra ("Defendant") opposed (ECF Nos. 15, 16), and Plaintiffs replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiffs' Motion for a Temporary Restraining Order is denied.

**I.    BACKGROUND**

The NIST is an engineering school located in Odisha, India. (Compl. ¶ 2, ECF No. 1; Def.'s Opp'n Certification ("Def.'s Cert.") ¶ 1, ECF No. 15.) Historically, the NIST interacts with its students and the public online through a website with the "nist.edu" domain name. (Compl. ¶ 32; Def.'s Cert. ¶ 8.) Indeed, the "nist.edu" website is central to "the school's primary means of messaging its students—[the] NIST's email [system]." (Compl. ¶ 33; *see also* Def.'s Cert. ¶ 19.)

Plaintiffs' Complaint concerns the control of and access to the "nist.edu" website. (*See generally* Compl.)

The NIST is operated, supported, and funded by the SM Charitable Educational Trust (the "Trust"). (Compl. ¶¶ 2, 15; Def.'s Cert. ¶¶ 1, 4.) Mudali, a citizen of India, is the Secretary of the Trust, which, according to Plaintiffs, "is the administrative head of the Trust, and represents the Trust in all matters relating to the affairs of the Trust."[1] (Compl. ¶ 3.) Mudali also asserts that he is the Secretary of the Board of Governors of the NIST, the body through which the Trust governs the NIST, (*id.*), as well as the Secretary and Director of the NIST itself, (*id.* ¶ 32.) Defendant, on the other hand, is the founder of the Trust and, until his alleged removal on May 16, 2020,[2] was Chairman of the Trust. (*Id.* ¶ 24; Def.'s Cert. ¶ 1.) Defendant asserts that, as Chairman of the Trust, he is—or was—the head of the institution. (Def.'s Cert. ¶ 21.) Mudali and Defendant are also brothers-in-law. (Compl. ¶ 20; Def.'s Cert. ¶ 6.)

On March 11, 2020, Defendant contacted Educause—the entity designated by the United States Department of Education to serve as the registrar and manager of ".edu" domain names—to have the website's account credentials assigned to Defendant. (Compl. ¶ 34; Def.'s Cert. ¶ 21.) Under Educause's "domain policy," "the senior-most executive of the registrant

---

[1] Defendant refers to Mudali as an "Invited Trustee" who "look[s] after NIST's local operations in Odisha, India." (Def.'s Cert. ¶ 6.)

[2] Plaintiffs assert that Defendant was removed as Chairman of the Trust by unanimous resolution by the remaining trustees for, *inter alia*, being an American citizen ineligible to be a trustee and "a wide array of malfeasance[.]" (Compl. ¶¶ 24–26.) Defendant contests this removal, arguing that (1) he was not aware of the removal until the instant litigation and (2) Mudali and the other trustees did not have authority to remove him "without following the notice, quorum, and voting requirements" that were established in a 2018 Mediation Order before the Supreme Court of India. (Def.'s Cert. ¶¶ 33–36; *see also* 2018 Mediation Order *5–6, Ex. B to Mot. for Temporary Restraining Order ("Mot. for TRO"), ECF No. 3-4 (page numbers preceded by an asterisk refer to the page number on the ECF header).)

2

institution or organization has ultimate authority over its [".edu"] account, including which representatives serve as the primary, administrative, and technical contacts for the account at any given time." (Educause NIST Account Review Correspondence ("Educause Account Review") *2, Ex. 1 to Mot. for TRO, ECF No. 3-14.) After reviewing Defendant's documentation and visiting the "nist.edu" website "to confirm his status as the overall head of the institution," Educause approved Defendant's request and transferred the account credentials from Mudali to Defendant. (*Id.* at *3; Compl. ¶ 37; Def.'s Cert. ¶ 21.) Following the approval, Defendant assigned the account credentials to Bhargav Anatani ("Anatani"), who is currently the Administrative Contact for the "nist.edu" website.[3] (Compl. ¶ 39; Def.'s Cert. ¶ 21; Def.'s Opp'n Br. 15, ECF No. 16.)

Educause denied Plaintiffs request to return the account credentials to Mudali's control. (Compl. ¶¶ 40–43.) Educause subsequently conducted a review of the parties' dispute, and, on August 4, 2020, affirmed its decision to grant Defendant control of the "nist.edu" account credentials. (*See generally* Educause Account Review *1–8.) Purportedly relying on "independent, official third-parties in India to inform its understanding of NIST institutional governance and administration[,]" Educause found that Defendant was the head of the NIST entitled to make account credential changes. (*Id.* at *4–8.)

After Educause declined to return the account credentials to Mudali's control, Plaintiffs began using the "nist.edu.in" domain name to communicate with NIST students. (Compl. ¶ 47;

---

[3] Plaintiffs allege that "Anatani is neither the top[-]ranking official at NIST, nor even currently employed by NIST—he is an ex-employee [who was] fired on February 29, 2020." (Compl. ¶ 67.) Defendant asserts that Mudali "unilaterally terminated over 100 NIST faculty members[, including Anatani,] despite his lack of authority to do so[.]" (Def.'s Opp'n Br. 10.) According to Defendant, a meeting of NIST's "Governing Body rendered [these] terminations 'unauthorized' and 'illegal.'" (*Id.* at 11.) Defendant refers to Anatani as a current member of the NIST faculty who "heads the institution's industry collaboration and partnership division." (*Id.* at 21.)

3

Def.'s Cert. ¶¶ 22–23.) The parties subsequently accused each other of wrongdoing and warned NIST students not to trust the opposing party or their website. (*See* Compl. ¶¶ 46–49; Def.'s Cert. ¶¶ 22–23.) Presently at issue is which individual—Mudali as Secretary or Defendant as Chairman—is the head of the NIST and entitled to the "nist.edu" website's account credentials. Plaintiffs assert that Defendant's Chairman title was honorary, and that Defendant was merely entitled to the same powers as other trustees. (Pls.' Moving Br. 17, ECF No. 3-1.) According to Plaintiffs, Mudali, as Secretary of the Trust, "was, and still is, the top[-]ranking official at [the] NIST." (*Id.* at 8.) Defendant, on the other hand, contends that he is the head of the NIST and that Educause's transfer of the account credentials to him was proper. (Def.'s Opp'n Br. 7–9.)

On September 4, 2020, Plaintiffs filed the instant Complaint against Defendant alleging (1) conversion of the "nist.edu" website domain, (Compl. ¶¶ 62–71); (2) tortious interference with prospective contractual relations, (*id.* ¶¶ 77–83); and (3) seeking declaratory judgment stating that Mudali is the Administrative Contact for the "nist.edu" website and restoring to him the associated account credentials, (*id.* ¶¶ 72–76). Plaintiffs presently seek a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(a) ordering: (1) Educause to restore Mudali as the Administrative Contact for "nist.edu"; (2) Defendant to "immediately cooperate and take necessary steps to allow Educause to restore . . . Mudali as the [A]dministrative [C]ontact for ['nist.edu']"; and (3) Defendant to transfer any funds he is in possession of to an NIST account. (Mot. for TRO 2, ECF No. 3.)

## II. LEGAL STANDARD

The standard for granting a temporary restraining order is the same as that for a preliminary injunction. *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). Accordingly, a party seeking a temporary restraining order "must show: (1) a likelihood of success on the merits; (2) that [the party] will suffer irreparable harm if the injunction is denied; (3) that granting

4

preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). "A [c]ourt will consider all four factors, but the first two are essential." *Leddy v. N. Valley Reg'l High Sch. Dist.*, No 17-5245, 2017 WL 3923291, at *7 (D.N.J. Sept. 5, 2017). Finally, "[p]reliminary injunctive relief is an extraordinary remedy[,] and should be granted *only* in limited circumstances." *Kos Pharm.*, 369 F.3d at 708 (emphasis added) (internal quotation marks and citation omitted).

## III. DISCUSSION

To demonstrate a likelihood of success on the merits, Plaintiffs must show that they "can win on the merits (which requires a showing of significantly better than negligible but not necessarily more likely than not)." *Riley v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "[W]hether a party has met this threshold will necessarily vary with the circumstances of each case[.]" *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017). "Nevertheless, [a] preliminary injunction cannot be issued when there are disputed issues of fact." *Gruntal & Co. v. Steinberg*, 843 F. Supp. 1, 16 (D.N.J. 1994) (internal quotation marks and citation omitted); *see also Guille v. Johnson*, No. 18-1472, 2020 WL 409743, at *1 ("Here, . . . there is a dispute as to the facts. Plaintiff cannot demonstrate a likelihood of success on the merits because of these factual disputes."); *Riley v. Brown*, No. 06-331, 2006 WL 842437, at *5 (D.N.J. Mar. 29, 2006) (discussing the standard of review for a temporary restraining order and preliminary injunction).

Mudali and Defendant vehemently disagree about the facts at issue in this case and each accuse the other of several instances of malfeasance and impropriety. (*See generally* Compl.; Def.'s Cert.) Moreover, the record does not definitively establish which individual is the top-ranking official of the NIST. Plaintiffs note that the Trust's Deed and the 2018 Mediation

5

Order state that the Secretary of the Trust "shall act as the administrative head of the Trust and shall represent [it] in all matters relating to the affairs of the Trust." (Pls.' Moving Br. 17 (citing Trust Deed *17, Ex. C to Mot. for TRO, ECF No. 3-5; 2018 Mediation Order *7).) According to Plaintiffs, this demonstrates that Mudali—not Defendant—is the NIST's top-ranking official. (Pls.' Moving Br. 5–6.) Plaintiffs' proclamations, however, are disputed not only by Defendant, but by Plaintiffs' own evidence.[4] (*See* Educause Account Review *4–8 (purportedly relying on "independent, official third-parties" with knowledge of the NIST's governance and finding that Defendant was the top-ranking official).)

The Court declines at this stage of the litigation—and for this extraordinary remedy—to determine who is the NIST's top-ranking official. Because this key issue is uncertain, the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits. "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of [injunctive relief]." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982). Accordingly, the Court denies Plaintiffs' Motion for a Temporary Restraining Order.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for a Temporary Restraining Order is denied. The Court will enter an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that Plaintiffs explicitly disagree with Educause's findings. (*See* Pls.' Moving Br. 10.) Notwithstanding Plaintiffs' disagreement, the Educause Account Review illustrates the uncertainty surrounding Plaintiffs' assertion that Mudali is the NIST's top-ranking official.