**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NATIONAL INSTITUTE OF SCIENCE AND
TECHNOLOGY, et al.,

              Plaintiffs,

              v.

SUKANT MOHAPATRA,

              Defendant.

Civil Action No. 20-12361 (MAS) (ZNQ)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Dr. Sukant Mohapatra's ("Defendant") Motion to Dismiss. (ECF No. 26.) Plaintiffs National Institute of Science and Technology (the "NIST") and Sangram Mudali ("Mudali") (collectively, "Plaintiffs") opposed (ECF No. 37) and Defendant replied (ECF No. 39). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is denied.

**I.    BACKGROUND**

As the parties are familiar with the facts of this case, as laid out in the Court's October 28, 2020 Memorandum Opinion (ECF No. 24), the Court only includes the background necessary for the resolution of the instant motion. Plaintiff NIST is an engineering school, operated by the SM Charitable Educational Trust (the "Trust"), located in Odisha, India. (Compl. ¶ 2, ECF No. 6.) Plaintiff Mudali is the Secretary of the Trust and Secretary of the Board of Governors of NIST.

(*Id.* ¶ 3.) As Secretary, Mudali is the administrative head of the Trust. (*Id.*) Defendant was a founder of the Trust and was the Chairman of the Trust from August 19, 1995, until his removal in 2005. (*Id.* ¶¶ 4, 17, 24.) Defendant's Chairmanship was reinstated on November 20, 2018, then removed again on May 16, 2020. (*Id.* ¶ 4.)

Defendant was removed as a trustee in 2005 for wrongful interference with NIST's bank accounts. (*Id.* ¶ 17.) The parties then entered litigation in Indian courts, during which Defendant sought reinstatement as a trustee of NIST. (*Id.*) After thirteen years of litigation, in 2018, Plaintiff Mudali agreed to reinstate Defendant as Chairman of the Trust. (*Id.* ¶¶ 17, 20.) The agreement to restore Defendant as Chairman was formalized by a mediation agreement entered by the Supreme Court of India on November 20, 2018 ("Mediation Order"). (*Id.* ¶ 21.) The Mediation Order provides that a Trustee may be removed if he or she becomes "lunatic," is "incapable of acting," or is "unfit to act." (*Id.*) Plaintiffs allege that Defendant was "well aware" of Clause 6(e) of the Mediation Order, which provides that a Trustee can be removed for being a "foreign trustee and incapable to act as a Trustee." (*Id.* ¶ 23.)

On March 11, 2020, Defendant contacted Educause—the entity designated by the United States Department of Education to serve as the registrar and manager of ".edu" domain names— to have the NIST website's account credentials assigned to Defendant. (*Id.* ¶¶ 33–34.) After reviewing Defendant's documentation and visiting the "nist.edu" website to confirm his status as the "overall head of the [institution]," Educause approved Defendant's request and transferred the account credentials from Mudali to Defendant. (*Id.* ¶ 37.) Following the approval, Defendant assigned the account credentials to Bhargav Anatani ("Anatani"), who is currently the Administrative Contact for the "nist.edu" website. (*Id.* ¶ 39.) After Educause declined to return the

account credentials to Mudali's control, Plaintiffs began using the "nist.edu.in" domain name to communicate with NIST students. (*Id.* ¶ 47.)

Plaintiffs allege that after Defendant gained control over the domain name, Defendant relinquished the administrative contact role "to various co-conspirators," including the current administrative contact, Mr. Anatani. (*Id.* ¶ 44.) Plaintiffs allege that Defendant's "cabal" sent "weaponized emails to students under cover of the school principal's official email account . . . directing them to ignore official school communications, not take exams, and not to pay tuition." (*Id.*) These e-mail messages were signed by Dr. Suhakar Das, who was fired from his role as Principal by NIST in February 2020. (*Id.* ¶ 45.) Plaintiffs allege Dr. Das is an "ally" of Defendant's. (*Id.*)

One e-mail message, dated April 17, 2020, had a subject line of "Urgent Attention: Regarding Fraudulent Mails and Messages to Students and their Parents of NIST, Odisha." (*Id.* ¶ 46.) Plaintiffs allege that in this e-mail message, Dr. Das claimed that e-mail messages were sent to students by "some fraudsters through a website nist.edu.in that's cunningly similar to ours – nist.edu. They are also sending mails to you to deposit your dues in an unauthorized [bank account]." (*Id.*) The "nist.edu.in" account the e-mail message refers to is the one Plaintiffs began using after losing control over the nist.edu domain name.

Defendant also sent an e-mail message that directed students to not make payments to fraudulent bank accounts and to ignore the fraudulent e-mail messages from the nist.edu.in account. (*Id.* ¶ 48.) The e-mail message, Plaintiffs allege, also contained other false and misleading information, including that a criminal action had been filed "against those fraudsters under various sections of the cyber crime act." (*Id.* ¶ 49.) Plaintiffs allege that Defendant arranged for other similar e-mail messages to be sent to NIST students and parents, including on April 18, 2020, May

3

2, 2020, May 14, 2020, June 27, 2020, July 1, 2020, July 5, 2020, and July 12, 2020. (*Id.* ¶ 51.) Plaintiffs allege that due to Defendant's interference, examinations could not be held during the month of May 2020. (*Id.* ¶ 50.)

Plaintiffs further allege that around July 2020, Defendant started directing students to deposit their NIST tuition payments into Defendant's personal bank accounts. (*Id.* ¶ 52.) As a result, Plaintiffs allege that the majority of NIST students did not pay their tuition for the 2020-2021 fall semester. (*Id.* ¶ 55.) Between June and August of 2020, NIST collected $7,000 in tuition, whereas it collected $1,700,000 during the same months in 2019, and $2,600,000 during the same months in 2018. (*Id.* ¶¶ 56, 57.) Similarly, Plaintiffs allege that fifty new students enrolled in NIST, compared with over 500 students during the same time period in the previous year. (*Id.* ¶ 58.)

On September 4, 2020, Plaintiffs filed the instant Complaint against Defendant (1) alleging conversion of the "nist.edu" website domain, (*id.* ¶¶ 62–71); (2) alleging tortious interference with prospective contractual relations, (*id.* ¶¶ 77–83); and (3) seeking declaratory judgment stating that Mudali is the Administrative Contact for the "nist.edu" website and restoring to him the associated account credentials, (*id.* ¶¶ 72–76). Defendant moves to dismiss on the grounds that: (1) Mudali waived the right to bring this action pursuant to the Mediation Order; (2) Mudali's claims fail on the merits; and (3) Mudali is not authorized to bring a claim on behalf of NIST. (Def.'s Moving Br., ECF No. 28.)

## II. LEGAL STANDARD

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept

4

as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (second alteration in original) (emphasis omitted) (internal citation omitted). Notwithstanding these principles, courts may not consider claims raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (alteration in original) (internal quotation omitted).

## III. DISCUSSION

### A. Supreme Court of India Mediation Order and Preclusion

Defendant moves to dismiss Plaintiffs' Complaint on the basis that the Mediation Order "foreclose[d] any subsequent relitigation of these issues." (Def.'s Moving Br. 4.) In support, Defendant points to the following language from the Mediation Order:

> [N]one of the parties shall raise/make any objection/complaint against each other relating to previous disputes/allegations/counter allegations raised before any court of law/authorities in connection with the above noted trust dispute/suits/appeal. If any of the parties will raise/make such complains before any court/authority/forum the same shall be rejected/dismissed at the threshold in view of this understanding and agreement.

(*Id.* at 8 (quoting Mediation Order *5,[1] Ex. B to Abraham Cert., ECF No. 27-2).) Defendant asserts that in light of the above provision, Plaintiffs now improperly seek a "second bite at the apple." (Def.'s Moving Br. 7.) Defendant argues that the Mediation Order resolved the thirteen-year long litigation between the parties in the Indian courts and brought "finality to litigation commenced in 2005 regarding the structure and control of NIST." (*Id.*) Defendant also argues that because the Mediation Order precluded re-litigation or appeal of any of the issues raised in that litigation and because the structure and control was one of those issues, Plaintiffs' claims for conversion and declaratory judgment should be dismissed. (*Id.* at 8.)

Defendant, however, does not offer any case law in support of the contention that a mediation agreement could preclude the litigation of claims that are alleged to have occurred years after the mediation agreement issued. As Plaintiffs point out, the language cited by Defendant from the Mediation Order clearly states that it precludes the parties from raising "*previous* disputes/allegations/counter allegations raised . . . in connection with the above noted trust

---

[1] Page numbers preceded by an asterisk refer to the page number of the ECF header.

6

dispute/suits/appeal." (Pls.' Opp'n Br. 5, ECF No. 37 (emphasis added) (citing Mediation Order *5).) As Defendant notes, both the Mediation Order and the underlying litigation it ended related to the structure of the Trust. This included the designation of the roles and titles of the parties as to the Trust and NIST. (*See generally* Mediation Order.) The Mediation Order does not, however, contemplate the ownership and rights as to the domain name at issue here and it does not discuss Defendant's alleged direction of student tuition into his personal bank accounts or any of the other allegations that form the basis of Plaintiffs' Complaint. Nor could it, of course, because the Mediation Order was entered on November 20, 2018, while the conduct challenged in this action is not alleged to have occurred until 2020. The Court, accordingly, finds that on its face, the Mediation Order does not preclude the instant action.[2]

**B.    Conversion**

Defendant also argues that because the Mediation Order did not grant Mudali "a right to immediate possession of the NIST website domain . . . Mudali's lack of a property interest is fatal to the conversion claim." (Def.'s Moving Br. 11.)[3] Again, because the Court finds that the Mediation Order, on its face, does not preclude this action or speak to the issues presented, Defendant's argument fails. Plaintiffs allege the domain name was "rightfully registered by Plaintiffs with Educause," was "hijacked" by Defendant, and that "Plaintiffs never authorized its

---

[2] Although the Court declines to dismiss the Complaint based on the Mediation Order, Defendants may renew these arguments at summary judgment and submit additional evidence that may establish that the Mediation Order was intended to bar the present action.

[3] Defendant also asserts that "both Mudali and Defendant remained trustees and members of the NIST Governing Body" and that "all financial transactions of [the Trust and NIST] . . . shall have the joint signatures of" both Mudali and Defendant per the terms of the Mediation Order. (Def.'s Moving Br. 12 (quoting Mediation Order *4).) By Defendant's own admission, then, there is at least some question of whether Defendant's allegedly *unilateral* conduct with regard to the domain name amounts to conversion. (*See id.* ("Mudali's contention not only defies logic but blatantly disregards the shared power dynamic set forth in the [Mediation Order]").)

7

transfer to Defendant, or any other party." (Compl. ¶ 63.) Accepting all of Plaintiffs' well-pled factual allegations as true, the Court finds Plaintiffs have plausibly stated a claim for conversion and Defendant's motion to dismiss this claim is denied.

## C. Declaratory Judgment

Defendant next argues that Mudali is not entitled to declaratory judgment designating him as the Administrative Contact for the NIST domain name because the Mediation Order gave Mudali and Defendant shared access to NIST's "finances and operations." (Def.'s Moving Br. 13.) As discussed above, the Mediation Order does not, on its face, make any reference to the NIST domain name, nor has Defendant claimed that the domain name was even at issue during that litigation. Nor has Defendant offered any case law or other support for this argument. The Court requires more than Defendant's bare assertion that the Mediation Order's resolutions relating to the structure and organization of NIST and of the Trust intended to cover the specific domain name issues now before the Court. Defendant's Motion to Dismiss Plaintiffs' claim for declaratory judgment is therefore denied.

Defendant also asserts that because neither Defendant nor Mudali may "independently maintain[] control of the domain," the fact that a "non-party NIST employee," Anatani, is the administrative contact for the domain name accomplishes the Mediation Order's "goal of maintaining power within the institution rather than in any one individual." (*Id.* at 14.) Accepting Plaintiffs' allegations as true, however, the current administrative contact, Mr. Anatani, was terminated by NIST in February 2020 and is not currently an employee. (Compl. ¶ 67.) Defendant does not address these allegations. (*See generally* Def.'s Moving Br.) Moreover, Plaintiffs allege Mr. Anatani is a "proxy" of Defendant and that Defendant "still maintains control" over NIST's domain name. (Compl. ¶ 67.) That Mr. Anatani is not a NIST employee and is being directed by

Defendant to send e-mail messages to students and parents and to purposefully divert funds from NIST may provide the basis for removing his control of the NIST domain.

Defendant's related request, that the Court should find that Mudali's claim for declaratory judgment is moot in light of the Court's October 28, 2020 Order denying Plaintiffs' Temporary Restraining Order ("TRO"), is also denied. (Def.'s Moving Br. 14.) Here, Defendant misstates the Court's previous position. (*See id.* ("The Court further noted Mudali's unlikelihood of success on the merits.").) In denying Plaintiffs' motion for a TRO, the Court noted that the "key issue" of "who is the NIST's top-ranking official . . . is uncertain." (Mem. Op. 6, ECF No. 24.) The Court, accordingly, declined to determine such a key issue at that stage of the litigation and on the record before it, and declines to do so now for the same reason.

### D. Tortious Interference

Defendant moves to dismiss NIST's claim for tortious interference with prospective contractual relations. The basis for NIST's claim is that Defendant "intentionally induced [NIST] students to breach their contractual obligations to pay tuition, with the deliberate intent of harming [NIST], and diverted tuition payments for Defendant's own personal gain." (Compl. ¶ 80.) As an initial matter, because the basis of NIST's tortious interference claim is the contractual relationship between NIST and its *students*, Defendant's argument that because Mudali and Defendant are both "the contracting party with *Educause*" Defendant "cannot have interfered with the contractual relationship" because he is not a "third party" to the contract, is misplaced. (Def.'s Moving Br. 15 (emphasis added).) Similarly, the cases Defendant cites are inapplicable to the tortious interference claim in this case. (*See id.* (citing *Kopp, Inc. v. United Techs., Inc.*, 223 N.J. Super. 548, 559 (App. Div. 1998); *Garshman v. Universal Res. Holding, Inc.*, 641 F. Supp. 1359, 1374 (D.N.J. 1986)).) Here, Plaintiffs have plausibly alleged the existence of a prospective contractual relationship with

students that would have been entered into had it not been for Defendant's alleged actions, and that Defendant knew of the prospective contract and intended to interfere with the relationship. (Compl. ¶¶ 78–83); *see Garshman*, 641 F. Supp. at 1374.

Defendant also argues that Mudali has no right to bring an action on behalf of NIST because the Mediation Order "unambiguously required both Defendant" and Mudali "to jointly approve financial expenditures on behalf of the organization." (Def.'s Moving Br. 14–15.) Defendant relatedly argues that "Mudali does not provide a shred of evidence that the Governing Body authorized the instant litigation or that Mudali has any authority to bring this action on behalf of NIST." (*Id.* at 16.) Defendant's arguments, however, are premised on Defendant still being Chairman of NIST. Defendant's argument that his removal was inconsistent with the terms of the Mediation Order fails, as Plaintiffs have pled that Defendant was removed and are not required, at this stage, to offer evidentiary proof as to their allegations, including specific evidence "that Defendant's wife voted to remove Defendant." (*See* Def.'s Reply 8.) Further, Plaintiffs provided the Trust's June 30, 2020 resolution authorizing this action. (Ex. 1 to Schaeffer Decl., ECF No. 18-2.) Defendant offers no legal authority or case law to support his reading of the Mediation Order as requiring the Governing Body's, and not the Trust's, authorization. To the extent that Defendant intends to bring a facial challenge to Plaintiffs' standing to bring this action, he has failed to brief this argument for the Court's consideration. Finally, the Court finds that in rebutting Defendant's standing arguments, (*see* Pls.' Opp'n Br. 11–12), Plaintiffs have not abandoned their tortious interference claim.

## IV. CONCLUSION

For the reasons set forth above, the Court denies Defendant's Motion to Dismiss.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**